8 So.2d 590

### JACKSON v. STATE.

### 8 Div. 225.

Court of Appeals of Alabama.
April 14, 1942.

Rehearing Denied May 12, 1942.

Watts & White, of Huntsville, for appellant.

Thos. S. Lawson, Atty. Gen., and Jas. F. Matthews, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The facts in this case as shown by the record are without material conflict. It is disclosed thereby that upon the occasion in question, the two defendants named in this indictment, towit, Charlie Jackson (appellant) and one Ollie McGee, also convicted, but did not appeal, took and carried away, from the person of one Johnnie Williams, the alleged injured party, a considerable sum of money amounting, according to the testimony of Williams, to be about $400 or more. In this connection Williams testified substantially as follows: "My name is Johnnie Williams. I live at 104 Half Street in Huntsville, Alabama. On the morning of November 6th, 1941, I saw the two defendants, Charlie Jackson and Ollie McGee. That was on Boyd Street where we were. I saw them out on the front porch as I was leaving. In my best judgment it was between 6:00 and 7:00 o'clock in the morning. All of a sudden Charlie Jackson jumped out in front of us. He was the older of the two. His first words were: 'This is a stick-up. I swear it is.' He had what I would call a 45 automatic in his hand when he said that. I had money on me at that time. I figured it would be four hundred and some dollars. I had a $100.00 bill at that time and two $50.00 bills and three $20.00 bills. I had that money on my person, in my pocket. The defendant Charlie Jackson told the other defendant Ollie McGee to get the money off me. He was slow about it and the defendant Jackson asked him if he wanted him (Jackson) to burn him up. The defendant McGee pulled out all my money and then Jackson told him to look in my shoes. The money he got off me was that $100.00 bill, two $50.00 bills and three $20.00 bills. The defendant Jackson, after the money had been taken, said, 'Get in the house and don't stick your head out the door.' And then he and the other defendant got in the car with a girl and drive off. This was in Madison County, Alabama. That was my money."

On further examination of said witness it was disclosed that he (witness) had engaged in a crap game with appellant and McGee the night before, as to this witness stated: "There had been a game there that night, and in that game I had won that $100.00 bill off the defendant Charlie Jackson, and I had won the two Fifties off of him. I had some tens and $5.00 bills myself. Jackson also had some money. I remember a twenty, or maybe there were two twenties, that I won off the defendant Jackson. I averaged when I counted my money $410.00. I don't remember how much I won. I didn't win all of it."

And upon redirect examination Williams further testified: "I won the money from Jackson and McGee in a crap game there in that same house some hours before they took the money off me. I had twenties, tens and fives myself. I had three twenties that were mine. I went into the game with them."

The alleged injured party also testified: "The $20.00 bills that he took from me, and the rest of the fives, and tens, was mine. It was mine before I even saw a game."

All of the foregoing was, as stated, without dispute or conflict. State witness,

470

Johnson Adams, testified: "My name is Johnson Adams. I know the defendants, Ollie McGee and Charlie Jackson, when I see them. I saw them about November 6th at my home on Boyd Street. As we were leaving the house that morning Johnnie Williams looked back and Jackson pulled a pistol and said, 'I swear before God this is a stick-up.' The gun you show me is the one he had there."

And upon cross and redirect examination witness Adams, stated:

"There was a game going on at my house a good part of the night. Johnnie. Williams won a $100.00 bill off the defendant Jackson, and he also won two $50.00 bills off him. He won some $20.00 bills off Jackson, but I don't know how many. I know he won some $20.00 bills off Jackson.

"I know that Johnnie Williams had one $20.00 bill when he went into the game that night. When he pulled his money out he had a $20.00 bill folded on the outside of his money. The outside bill on his roll was a $20.00 bill."

There was other evidence of like import. The defendants offered no testimony upon the trial.

We have thoroughly examined the entire record in this case, and are free to state it would be difficult to accord to any person charged with crime a fairer trial than was accorded to this appellant and his codefendant.

■ There is no phase of this case which would entitle the accused to a directed verdict, and the trial court was correct in refusing to so charge the jury.

The theory and insistences of the defendant on the trial below, and here, on appeal, were to the effect that the defendant had the legal right, by force of arms, to take from Williams the money he had won from the defendants in the crap game above mentioned. Whatever merit there may be in this insistence, it needs no discussion at our hands, for the reason it affirmatively appears from the undisputed evidence that Williams, the alleged injured party, had in his possession a considerably large sum of money of his own taken away from him on the occasion in question, money that he did not win in. the crap game; and upon this undisputed evidence the jury was fully warranted in returning its verdict. In this connection we again quote from the testimony certain excerpts thereof bearing upon this question. The

injured party testified: "I had that money on my person, in my pocket. The defendant Jackson told the other defendant, Ollie McGee, to get the money off me. * * * The defendant McGee pulled out all my money. * * * That was my money. * * * I had twenties, tens and fives myself. I had three twenties that were mine. I went into the game with them. * * * I had some other money on me. The money I made change with and the other twenty I did not win in the game that night. * * * I had about a hundred and sixty dollars of my own money. * * * The $20.00 bills that he took from me and the rest of the fives and tens was mine. It was mine before I even saw a game. * * * The twenties were mine and the ten and ones. * * * I had four $20.00 bills in my possession when I was robbed. Three of these I took into the game with me and they never left my possession that night."

In part corroboration of the foregoing statements testified to by the alleged injured party on the trial, state witness Johnson Adams, among other things, testified: "I know that Johnnie Williams had one $20.00 bill when he went into the game that night. When he pulled his money out he had a $20.00 bill folded on the outside of his money. The outside bill on his roll was a $20.00 bill."

■ In this case, as in all criminal prosecutions, the jury trying the case was under the duty to consider all the evidence submitted to them, and to accord thereto such probative force, or weight as in their judgment it was entitled to. The foregoing evidence, coupled with the other testimony in the case, all of which was without dispute or conflict, and was, in our opinion, amply sufficient to support the judgment of conviction pronounced and entered and from which this appeal was taken.

■ There is a statute in this state, of many years standing, which provides: "All contracts, founded in whole or in part, on a gambling consideration, are void; and any person who has paid any money, or delivered any thing of value lost upon any game or wager, may recover such money, thing or its value, by action commenced within six months from the time of such payment or delivery." Code 1940, Tit. 9, § 44.

Said statute speaks for itself, and provides the only legal method or manner by which the loser in a gambling transaction

may recover the money, or thing of value lost by him in such transaction. No court of competent jurisdiction would be authorized or empowered to enlarge upon the specific provisions of said statute, and certainly it could never be so construed so as to justify or condone outrageous and lawless conduct such as the undisputed testimony in this case discloses the defendants committed upon the occasion in question. Moreover, even if a party could be allowed, or justified, in the commission of such acts, it cannot be reasonably contended that by such conduct he could be allowed to not only recover the identical money, or thing of value he lost himself, but also vi et armis, could also be allowed, as here, to take from the injured party the money which actually belonged to said party.

In this case we have carefully and attentively considered each and every exception reserved to the rulings of the court throughout the trial. From the view we take there is no semblance of reversible error in any of said rulings by the court. To the contrary we quote, with our approval, the remarks in the brief of the Attorney General, representing the state, wherein it is said: "Upon an examination of the record it will appear that this case was tried upon the most favorable terms to appellant and that the issue squarely before the jury for its determination was whether in addition to money lost by the defendants they took from the person of the State's witness money also belonging to him, with which he entered the game."

Affirmed.